## UNITED STATES DISTRICT COURT
## WESTERN DSTRICT OF KENTUCKY
## AT LOUISVILLE

### Case No. 3:16-CV-25-DJH

Marva Dockery, as Attorney-In-Fact                                    PLAINTIFF
of Mildred Marshall

v.

GGNSC Louisville Hillcreek, LLC                                    DEFENDANTS
d/b/a Golden LivingCenter – Hillcreek;
GGNSC Administrative Services, LLC;
GGNSC Clinical Services, LLC;
GGNSC Equity Holdings, LLC;
Golden Gate National Senior Care, LLC;
GGNSC Holdings, LLC;
James Rife, in his capacity as Administrator
Of Golden LivingCenter – Hillcreek;
Renay Adkins, in her capacity as Administrator of
Golden LivingCenter – Hillcreek;
Jen Hancock, in her capacity as Admissions
Coordinator of Golden LivingCenter – Hillcreek

### FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Marva Dockery, as Attorney-In-Fact of Mildred Marshall,

and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), for her First Amended Complaint

states as follows:

1.      Marva Dockery is the daughter of Mildred Marshall and her Attorney-in-Fact,

pursuant to the September 18, 2015 General Power of Attorney, attached hereto as **Exhibit A**. Ms.

Dockery brings this action on behalf of Ms. Marshall. Marva Dockery is a resident of Louisville,

Jefferson County, Kentucky, and a citizen of the Commonwealth of Kentucky.

2.      Upon information and belief, Mildred Marshall was most recently admitted as a

resident of Golden LivingCenter – Hillcreek (sometimes referred to as "facility"), located at 3116

Breckinridge Lane, Louisville, Jefferson County, Kentucky approximately July 09, 2015, and

remained a resident there until approximately September 05, 2015.

3.     Defendant GGNSC Louisville Hillcreek, LLC d/b/a Golden LivingCenter – Hillcreek (sometimes referred to as "the facility") is a foreign limited liability company authorized to do business in the Commonwealth of Kentucky, with its principal office located at 3116 Breckenridge Lane, Louisville, Kentucky. Upon information and belief, at times material to this action, Defendant GGNSC Louisville Hillcreek, LLC owned, operated, managed, controlled, and/or provided services for Golden LivingCenter – Hillcreek in Louisville, Jefferson County, Kentucky. Upon information and belief, Defendant GGNSC Louisville Hillcreek, LLC was, at times material to this action, the "licensee" of the facility. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, GGNSC Louisville Hillcreek, LLC was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action made the basis of this suit arise out of such business conducted by said GGNSC Louisville Hillcreek, LLC in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of GGNSC Louisville Hillcreek, LLC is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

4.     Defendant GGNSC Administrative Services, LLC is a foreign limited liability company and, upon information and belief, is engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. Upon information and belief, at times material to this action, Defendant GGNSC Administrative Services, LLC owned, operated, managed, controlled and/or provided services for nursing facilities, including Golden LivingCenter – Hillcreek in Louisville, Jefferson County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant GGNSC Administrative Services, LLC in the ownership, operation, management, control and/or services

2

provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of GGNSC Administrative Services, LLC is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

5.      Defendant GGNSC Clinical Services, LLC is a foreign limited liability company and, upon information and belief, is engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. Upon information and belief, at times material to this action, Defendant GGNSC Clinical Services, LLC owned, operated, managed, controlled and/or provided services for nursing facilities, including Golden LivingCenter – Hillcreek in Louisville, Jefferson County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant GGNSC Clinical Services, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of GGNSC Clinical Services, LLC is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

6.      Defendant GGNSC Equity Holdings, LLC is a foreign limited liability company and, upon information and belief, is engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. Upon information and belief, at all times material to this action, Defendant GGNSC Equity Holdings, LLC owned, operated, managed, controlled and/or provided services for nursing facilities, including Golden Livingcenter – Hillcreek in Louisville, Jefferson County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant GGNSC Equity Holdings, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of GGNSC Equity

Holdings, LLC is Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

7.     Defendant Golden Gate National Senior Care, LLC is a foreign limited liability company and, upon information and belief, is engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. Upon information and belief, at all times material to this action, Defendant Golden Gate National Senior Care, LLC owned, operated, managed, controlled and/or provided services for nursing facilities, including Golden Livingcenter – Hillcreek in Louisville, Jefferson County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Golden Gate National Senior Care, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of Golden Gate National Senior Care, LLC is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

8.     Defendant GGNSC Holdings, LLC is a foreign limited liability company and, upon information and belief, is engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. Upon information and belief, at times material to this action, Defendant GGNSC Holdings, LLC owned, operated, managed, controlled and/or provided services for nursing facilities, including Golden Livingcenter – Hillcreek in Louisville, Jefferson County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant GGNSC Holdings, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Mildred Marshall. The registered agent for service of process of GGNSC Holdings, LLC is Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

4

9.     Upon information and belief, Defendant James Rife is a citizen and resident of the Commonwealth of Kentucky and was an Administrator of Golden LivingCenter – Hillcreek during the residency of Mildred Marshall. The causes of action made the basis of this suit arise out of James Rife's administration of Golden LivingCenter – Hillcreek during the residency of Ms. Marshall. As the administrator, James Rife was responsible for ensuring that the facility operated and provided services in compliance with all applicable federal and state laws and regulations and with accepted professional standards and principles. 42 C.F.R. § 483.75. He was also responsible for the day-to-day management of the facility. *Id*. In addition, Mr. Rife was also responsible for enforcing policies and procedures for the operation of the facility, which were developed by the other corporate entities named as Defendants herein, including but not limited to enforcement of the policies and procedures and method related to presenting the arbitration agreement to potential residents and obtaining signatures of potential residents on that arbitration agreement. Mr. Rife is a necessary and indispensable party to these causes of action and is a Defendant whose conduct forms a significant basis of the claims asserted by the Plaintiff. Defendant James Rife may be served with process at his last known business address: 3116 Breckenridge Ln., Louisville, Kentucky 40220.

10.     Defendant Renay Adkins is a citizen and resident of the Commonwealth of Kentucky and was an Administrator of Golden LivingCenter – Hillcreek during the residency of Mildred Marshall. The causes of action made the bases of this suit arise out of Renay Adkins' administration of Golden LivingCenter – Hillcreek during the residency of Ms. Marshall. As the administrator, Renay Adkins was responsible for ensuring that the facility operated and provided services in compliance with all applicable federal and state laws and regulations and with accepted professional standards and principles. 42 C.F.R. § 483.75. She was also responsible for the day-to-day management of the facility. *Id*. In addition, Ms. Adkins was also responsible for enforcing

policies and procedures for the operation of the facility, which were developed by the other corporate entities named as Defendants herein, including but not limited to enforcement of the policies and procedures and method related to presenting the arbitration agreement to potential residents and obtaining signatures of potential residents on that arbitration agreement. Ms. Adkins is a necessary and indispensable party to these causes of action and is a Defendant whose conduct forms a significant basis for the claims asserted by the Plaintiff. Defendant Renay Adkins may be served with process at her business address: 3116 Breckenridge Ln., Louisville, Kentucky 40220.

11.     Defendant Jen Hancock is a citizen and resident of the Commonwealth of Kentucky and was the Admissions Coordinator of Golden LivingCenter – Hillcreek during the residency of Mildred Marshall. The causes of action made the basis of this suit arise out of Ms. Hancock's performance of the duties of the Admission Coordinator at Golden LivingCenter – Hillcreek during the residency of Mildred Marshall, specifically executing the policies and procedures and method related to presenting the arbitration agreement to potential residents and their responsible parties. As the individual designated by the Defendants to be present at the Facility, to plan, organize, develop, and direct the overall admissions process at the facility while following the admitting guidelines, the Admissions Coordinator is a Defendant whose conduct forms a significant basis for the claims asserted by the Plaintiff. Defendant Jen Hancock may be served with process at her last known business address, 3116 Breckinridge Lane, Louisville, Kentucky 40220.

12.     Whenever the term "Nursing Home Defendants" is used within this suit, such term collectively refers to GGNSC Louisville Hillcreek, LLC d/b/a Golden LivingCenter – Hillcreek; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC; GGNSC Equity Holdings, LLC; Golden Gate National Senior Care, LLC; and GGNSC Holdings, LLC.

13.     Whenever the term "Administrator Defendants" is used within this suit, such term refers to Renay Adkins, in her capacity as Administrator of Golden LivingCenter – Hillcreek, and

6

James Rife, in his capacity as Administrator of Golden LivingCenter – Hillcreek, respectively during their periods as Administrator of Golden LivingCenter—Hillcreek.

14.     Whenever the term "Admissions Coordinator Defendant" is used within this suit, such term refers to Jen Hancock, in her capacity as Admissions Coordinator of Golden LivingCenter – Hillcreek.

15.     Whenever the term "Defendants" is utilized within this portion of the complaint, such term collectively refers to and includes all named Defendants except the Admissions Coordinator Defendant. *See* ¶ 66, *infra*.

16.     The Defendants collectively controlled the operation, planning, management, budget, and quality control of Golden LivingCenter – Hillcreek. The authority exercised by the Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation, and implementation of all policies and procedures used by the nursing facility, federal and state reimbursement through Medicare and Medicaid, quality care assessment and compliance, federal and state licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

17.     This case was originally filed in the Circuit Court of Jefferson County, Kentucky. The case was removed to the United States District Court for the Western District of Kentucky pursuant to a Notice of Removal filed by the Nursing Home Defendants on January 12, 2016, in which the Nursing Home Defendants incorrectly alleged federal, diversity-of-citizenship jurisdiction. Jurisdiction and venue are ***not*** proper in the United States District Court for the Western District of Kentucky, and this case must be remanded. Jurisdiction and venue ***are*** proper in the Circuit Court of Jefferson County, Kentucky.

## **FACTUAL ALLEGATIONS**

18.     Other than hospitalizations, Mildred Marshall was most recently a resident of Golden LivingCenter – Hillcreek from approximately July 09, 2015 until approximately September 05, 2015.

19.     Mildred Marshall was looking to the Defendants for treatment of her total needs for custodial, nursing, and medical care and not merely as the situs where others not associated with the facility would treat her.

20.     At all relevant times mentioned herein, Defendants owned, operated, managed and/or controlled Golden LivingCenter – Hillcreek, either directly, through a joint enterprise, partnership and/or through the agency of each other and/or other diverse subalterns, subsidiaries, governing bodies, agents, servants, or employees.

21.     Defendants are directly or vicariously liable for any acts and omissions by any person or entity, controlled directly or indirectly, including any governing body, officer, employee, ostensible or apparent agent, partner, consultant or independent contractor, whether in-house or outside individuals, entities or agencies.

22.     Defendants failed to discharge their obligations of care to Mildred Marshall with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Mildred Marshall, as more fully set forth below. The Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Golden LivingCenter – Hillcreek.

23.     The Defendants were on notice and aware of problems with resident care at Golden LivingCenter – Hillcreek based upon surveys conducted at the facility by the Cabinet for Health & Family Services both prior to and during the residency of Mildred Marshall. For example, in

multiple surveys prior to, during, and immediately following Ms. Marshall's residency, the facility

was cited for numerous deficiencies relevant to the injuries of Mildred Marshall, including:

a)   Failure to make sure the nursing home area is free from accident hazards and risks and provides supervision to prevent avoidable accidents. (August 29, 2015);

b)   Failure to have a program that investigates, controls and keeps infection from spreading. (August 29, 2015);

c)   Failure to make sure that a working call system is available in each resident's room or bathroom and bathing area. (June 05, 2014 and again on November 10, 2014);

d)   Failure to develop policies that prevent mistreatment, neglect, or abuse of residents or theft of resident property. (April 01, 2014 and again on June 05, 2014);

e)   Failure to make sure services provided by the nursing facility meet professional standards of quality. (March 08, 2014 and again on August 29, 2015); and

f)   Failure to provide care by qualified persons according to each resident's written plan of care. (March 08, 2014, June 05, 2014, November 10, 2014, and again on August 29, 2015)

24.   Due to the wrongful conduct of the Defendants, Mildred Marshall suffered

accelerated deterioration of her health and physical condition beyond that caused by the normal

aging process and the deterioration of her functional ability, as well as the following injuries:

a)   Numerous falls with injuries;

b)   Left hip fracture from fall;

c)   Laceration to head from fall;

d)   UTIs;

e)   E-Coli;

f)   Fecal Impaction; and

g)   Significant weight loss.

9

25.     Mildred Marshall in addition suffered unnecessary loss of personal dignity, extreme pain and suffering, hospitalizations, degradation, mental anguish, disability, and disfigurement, all of which were caused by the wrongful conduct of the Defendants as alleged below.

## CAUSES OF ACTION AGAINST THE NURSING HOME DEFENDANTS

## NEGLIGENCE

26.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 - 25 as if fully set forth herein.

27.     The Nursing Home Defendants owed a non-delegable duty to Mildred Marshall to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

28.     Upon information and belief, the Nursing Home Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Mildred Marshall.

29.     The Nursing Home Defendants negligently failed to deliver care, services, and supervision, including, but not limited to, the following acts and omissions:

   a. Failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

   1) ensuring compliance with rules and regulations designed to protect the health and safety of the residents, such as Mildred Marshall, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care;

   2) ensuring compliance with the resident care policies for the facility; and

   3) ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

   b. Failure to provide a facility that was sufficiently staffed with personnel that was properly qualified and trained;

10

c.  Failure to provide the minimum number of qualified personnel to meet the total needs of Mildred Marshall;

d.  Failure to maintain all records on Mildred Marshall in accordance with accepted professional standards and practices:

e.  Failure to ensure that Mildred Marshall received adequate and proper nutrition, fluids, supervision, therapeutic, and skin care;

f.  Failure to increase the number of personnel at the facility to ensure that Mildred Marshall received timely and appropriate custodial care, including, but not limited to, bathing, grooming, incontinent care, personal attention and care to her skin, feet, nails, and oral hygiene;

g.  Failure to have in place adequate guidelines, policies and procedures of the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

h.  Failure to monitor or increase the number of nursing personnel at the facility to ensure that Mildred Marshall:

   1)  received timely and accurate care assessments;

   2)  received prescribed treatment, medication and diet; and

   3)  received timely custodial, nursing and medical intervention due to a significant change in condition.

i.  Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

j.  Failure to take all necessary and reasonable custodial and nursing measures to prevent avoidable falls and infections during Mildred Marshall's residency;

k.  Failure to provide a safe environment for care, treatment, and recovery, and to exercise ordinary care and attention for the safety of Mildred Marshall in proportion to her particular physical and mental ailments, known or discoverable by the exercise of reasonable skill and diligence;

l.  Failure to provide adequate hygiene and sanitary care to prevent infection;

m.  Failure to provide proper custodial care; and

n.  Failure to abide by applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

11

30.     A reasonably careful nursing facility would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious injuries to Mildred Marshall. With regard to each of the foregoing acts of negligence, the Nursing Home Defendants acted with oppression, fraud, malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Mildred Marshall.

31.     In addition, Plaintiff also alleges the Nursing Home Defendants violated statutory and regulatory duties of care, the violations of which are further evidence of their negligence and which caused the injuries suffered by Mildred Marshall. The statutory and regulatory violations of the Nursing Home Defendants included, but are not limited to, violation(s) of the following:

a.      Violation(s) of KRS 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Mildred Marshall;

b.      Violation(s) of KRS 508.090 et seq., criminal abuse, by committing intentional, wanton, or reckless abuse of Mildred Marshall, who was physically helpless or mentally helpless or permitting Ms. Marshall, a person of whom the Nursing Home Defendants had actual custody, to be abused. Such abuse caused serious physical injury, placed Ms. Marshall in a situation that might cause her serious physical injury, and/or caused torture, cruel confinement or cruel punishment of Mildred Marshall;

c.      Violation(s) of KRS 530.080 et seq., endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Mildred Marshall, who was unable to care for herself because of her illness;

d.      Violation(s) of KRS 216.520, requiring long term care facilities to provide appropriate staff training to implement each of the residents' rights as defined in KRS 216.515 to 216.525;

e.      Violation(s) of KRS 506.080, criminal facilitation of criminal act(s), by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more of the foregoing criminal acts, and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal act(s) and which in fact aided another person or entity to commit the criminal act(s); and/or

f.      Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder.

32.     As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Mildred Marshall suffered the injuries described in Paragraph 24. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, hospitalization, and unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## MEDICAL NEGLIGENCE

33.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 32 as if fully set forth herein.

34.     Nursing Home Defendants had a duty to provide the standard of professional medical care and services of a reasonably competent nursing facility acting under the same and similar circumstances.

35.     Nursing Home Defendants failed to meet applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendants included, but was not limited to, the following acts and omissions:

a.      The overall failure to ensure that Mildred Marshall received the following:

1)      timely and accurate care assessments;

2)      prescribed treatment, medication, and diet;

3)      necessary supervision; and

13

4)      timely nursing and medical intervention due to a significant change in condition;

b.      Failure to provide and implement an adequate nursing care plan based on the needs of Mildred Marshall;

c.      Failure to provide proper treatment and assessment to Mildred Marshall in order to prevent and care for infections;

d.      Failure to provide care, treatment and medication in accordance with physician's orders;

e.      Failure to take all necessary and reasonable custodial and nursing measures to prevent avoidable falls and infections during Mildred Marshall's residency;

f.      Failure to adequately and appropriately monitor Mildred Marshall and recognize significant changes in her health status, and to timely notify her physician of significant changes in her health status;

g.      Nursing Home Defendants were responsible for the infliction of physical pain, injury, and mental anguish upon Mildred Marshall;

h.      Failure to ensure Mildred Marshall was not deprived of the services necessary to maintain her health and welfare; and

i.      Failure to notify the physician of a significant change in her condition.

36.    It was foreseeable that the breaches of care listed above would result in serious injuries to Mildred Marshall. A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

37.    With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Mildred Marshall.

38.    As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Mildred Marshall suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement,

14

hospitalization, and unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

### CORPORATE NEGLIGENCE

39.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 38 as if fully set forth herein.

40.     Mildred Marshall was looking to the Nursing Home Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. There is a presumption that the treatment Ms. Marshall received was being rendered through employees of Nursing Home Defendants and that any negligence associated with that treatment would render Nursing Home Defendants responsible. Nursing Home Defendants, or persons or entities under their control, or to the extent Nursing Home Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Mildred Marshall, to use the degree of skill and care which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

41.     Nursing Home Defendants owed a non-delegable duty to assist Mildred Marshall in attaining and maintaining the highest level of physical, mental and psychological well-being.

42.     Nursing Home Defendants owed a duty to Mildred Marshall to maintain their facility in such a manner as to enable them to meet the needs of Ms. Marshall, including providing and maintaining medical equipment and supplies, and hiring, supervising and retaining nurses and other staff employees.

43.     Nursing Home Defendants owed a duty to Mildred Marshall to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, by-laws, or guidelines, which were adopted by Nursing Home Defendants to ensure smoothly-run facilities and adequate resident care.

44.     Nursing Home Defendants owed a duty to Mildred Marshall to provide a safe environment, treatment, and recovery, and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Ms. Marshall from danger due to her inability to care for herself. Nursing Home Defendants had a duty to protect Ms. Marshall from any danger which the surroundings would indicate might befall her in view of any peculiar trait exhibited by her or which her mental condition or aberration would suggest as likely to happen.

45.     Nursing Home Defendants breached their duty to Mildred Marshall by the manner in which they owned, operated, and exercised control over Golden LivingCenter – Hillcreek.

46.     With regard to the foregoing acts of negligence detailed herein, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Mildred Marshall.

47.     As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Mildred Marshall suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, hospitalization, and unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required

for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS

48.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 47 as if fully set forth herein.

49.     Nursing Home Defendants violated statutory duties owed to Mildred Marshall as a resident of a long term care facility, Kentucky Revised Statutes 216.510, *et seq*. These statutory duties were non-delegable.

50.     The violations of the resident's rights of Mildred Marshall include, but are not limited to:

        a.     Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality;

        b.     Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

        c.     Violation of the right of the resident, her responsible party, responsible family member, or her guardian to be fully informed of the resident's medical condition;

        d.     Violation of the right to be free from mental and physical abuse; and

        e.     Violation of the right to be given assistance when needed in maintaining body hygiene and good grooming.

51.     As a result of the aforementioned violations of the Resident's Rights Statute by Nursing Home Defendants, pursuant to K.R.S. § 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorneys' fees.

52.     With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Mildred Marshall and, pursuant to K.R.S. § 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorneys' fees.

## CAUSES OF ACTION AGAINST THE ADMINISTRATOR DEFENDANTS

### NEGLIGENCE

53.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 52 as if fully set forth herein.

54.     Upon information and belief, Renay Adkins and James Rife were Administrators of Golden LivingCenter – Hillcreek during Mildred Marshall's residency there.

55.     As a nursing home administrator licensed by the State of Kentucky, Renay Adkins and James Rife owed ordinary duties of care to Mildred Marshall, as well as professional duties and statutory duties owed to residents by licensed nursing home administrators in this state, pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as Kentucky Revised Statutes sections 216A.010, *et seq*.

56.     As a holder of a nursing home administrator's license, Renay Adkins and James Rife were legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57.     As administrator, Defendants Renay Adkins and James Rife were also responsible for the total management of the facility pursuant to federal law.

18

58.     Administrator Defendants' management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

59.     Defendant Renay Adkins and James Rife breached the duties of ordinary care owed to Mildred Marshall as administrator and failed to operate, manage, or administer the facility in compliance with accepted professional standards and principles through acts and omissions including, but not limited to, the following:

    a.    The failure to provide sufficient numbers of qualified personnel to meet the total needs of Mildred Marshall throughout her residency and to ensure that Mildred Marshall:

        i.    Received timely and accurate care assessments;

        ii.    Received prescribed treatment, medication, and diet; and

        iii.    Was protected from accidental injuries by the correct use of ordered and reasonable safety measures;

    b.    The failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

    c.    The failure to ensure that Mildred Marshall was provided with basic and necessary care and supervision;

    d.    The failure to ensure that Mildred Marshall attained and maintained her highest level of physical, mental, and psychosocial well-being;

    e.    The failure to ensure that Mildred Marshall received care, treatment, and medication as prescribed or in accordance with physician's orders;

    f.    The failure to ensure that Mildred Marshall was treated with the dignity and respect that all nursing home residents are entitled to receive;

    g.    Failure to take all necessary and reasonable custodial and nursing measures to prevent avoidable falls and infections during Mildred Marshall's residency;

    h.    The failure to provide a safe environment for Mildred Marshall;

i.       The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at the facility;

j.       The failure to discipline or terminate employees at the facility assigned to Mildred Marshall that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health and Family Services;

k.      The failure to adopt adequate guidelines, policies, and procedures for:

1) Investigating the relevant facts, underlying deficiencies, or licensure violations, or penalties found to exist at the facility by the Cabinet for Health and Family Services or any other authority;

2) Determining the cause of any such deficiencies, violations, or penalties;

3) Establishing the method and means for correcting deficiencies, licensure violations, or penalties found to exist at the facility;

4) Determining whether the facility had sufficient numbers of personnel to meet the total needs of Mildred Marshall; and

5) Documenting, maintaining files, investigating, and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person;

l.       The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to Mildred Marshall and other residents;

m.     The failure to provide adequate supervision to the nursing staff so as to ensure that Mildred Marshall received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, and skin care to prevent infection, and sufficient nursing, observation, and examination of the responses, symptoms, and progress in the physical condition of Mildred Marshall; and

n.      The failure to maintain all records on Mildred Marshall in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnoses, treatment, and appropriate care plans for care and treatment.

60.    A reasonably careful nursing home administrator would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious

injuries to Mildred Marshall. Each of the foregoing acts of negligence on the part of the Administrator Defendants was accompanied by such wanton or reckless disregard for the health and safety of Mildred Marshall as to constitute gross negligence.

61.     Additionally, the Administrator Defendants' failure to operate, manage, or administer the facility in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents, included, but was not limited to:

     a.     The failure to ensure compliance with rules and regulations of the Cabinet for Health and Family Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the federal minimum standards imposed by the United States Department of Health and Human Services;

     b.     The failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health and Family Services to provide the minimum number of staff necessary to assist Mildred Marshall with her needs;

     c.     The failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrator Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 et seq.;

     d.     The failure to provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Mildred Marshall, and in accordance with the comprehensive assessment and plan of care created at the facility;

     e.     The failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Mildred Marshall in accordance with the resident care plan generated at the facility;

62.     In addition, the Administrator Defendants also failed to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Mildred Marshall, including but not limited to:

     a.     The failure to ensure that a nursing care plan based on Mildred Marshall's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental, and psychosocial

needs as identified in her comprehensive assessment,       which       was supposed to be reviewed and revised when Mildred Marshall's needs changed;

b.      The failure to notify Mildred Marshall's family and physician of a need to alter her treatment significantly;

c.      The failure to provide a safe environment;

d.      The failure to ensure that Mildred Marshall maintained acceptable parameters of nutritional status and received a therapeutic diet throughout her residency; and

e.      Failure to take all necessary and reasonable custodial and nursing measures to prevent avoidable falls and infections during Mildred Marshall's residency.

63.     Mildred Marshall is a member of a class intended to be protected by the above laws and regulations. The injuries alleged in Paragraph 24 resulted from events that the laws and regulations were designed to prevent.

64.     It was foreseeable that the foregoing breaches of duties would result in serious injuries to Mildred Marshall. Each of the foregoing acts of negligence on the part of the Administrator Defendants was accompanied by such wanton or reckless disregard for the health and safety of Mildred Marshall as to constitute gross negligence.

65.     As a direct and proximate cause of such grossly negligent, wanton, or reckless conduct, Mildred Marshall suffered the injuries described herein, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Administrator Defendants, in their capacity as Administrator of the facility, including but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, hospitalization, and unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

**CAUSES OF ACTION AGAINST THE NURSING HOME DEFENDANTS,
ADMINISTRATOR DEFENDANTS, AND ADMISSIONS COORDINATOR:**

66.     Whenever the term "Defendants" is utilized within this portion of the complaint, such term collectively refers to and includes all named Defendants.

**FACTUAL ALLEGATIONS:**

67.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 66 as if fully set forth herein.

68.     On approximately July 9, 2015, Mildred Marshall arrived at Golden LivingCenter – Hillcreek having just been discharged from the hospital. Ms. Marshall's daughter, Marva Dockery, was present with Ms. Marshall during her admission to the facility. *See* Affidavit of Marva Dockery (attached as **Exhibit B**). Ms. Marshall and her family were looking to the facility for treatment of her total needs, including nursing, medical, and custodial care, as she and her family were incapable of meeting those needs themselves.

69.     Upon their arrival, Ms. Marshall was escorted directly to her room where she remained with Ms. Dockery. Ms. Marshall was not presented with any documents related to her residency at the facility during this time. Ms. Marshall did not receive admissions paperwork of any kind. Likewise, Ms. Marshall was not presented with an arbitration agreement of any kind. Marva Dockery remained in Mildred Marshall's room for several hours, and at no time did any facility employee present Mildred Marshall with admission or arbitration agreements regarding Ms. Marshall's residency.

70.     The Nursing Home Defendants have now produced a document entitled "Alternative Dispute Resolution Agreement," which they allege that Mildred Marshall executed (attached hereto as **Exhibit C**). The Nursing Home Defendants assert that this agreement requires Plaintiff's claims to be resolved in arbitration, and the Nursing Home Defendants have filed a

separate lawsuit in the U.S. District Court for the Western District of Kentucky demanding that Plaintiff arbitrate her claims. *See GGNSC Louisville Hillcreek, LLC v. Dockery*, No. 3:15-CV-908-DJH.

71.     Mildred Marshall did not execute the Alternative Dispute Resolution Agreement (hereinafter "Arbitration Agreement"), which the Nursing Home Defendants are attempting to enforce. *See* Letter of Opinion from Joe Lucas, Forensic Document Examiner (attached as **Exhibit D**); *See also* **Exhibit B** at ¶¶ 6-10. Furthermore, the document is executed with the initials "M.W." which are not the initials of Mildred Marshall.

72.     Upon information and belief, the Defendants forged a signature on the Arbitration Agreement without Mildred Marshall's permission, rather than presenting the agreement to Ms. Marshall and giving her an opportunity to execute it herself. Alternatively, the Defendants forged a signature on the Arbitration Agreement after Ms. Marshall declined to sign such agreement. By forging a signature on this agreement, the Defendants deprived Ms. Marshall of the opportunity to review the agreement and understand the implications that an arbitration agreement would have on her constitutional right to trial by jury should any claims arise during her residency Alternatively, the Defendants forged a signature on this agreement after Ms. Marshall expressly declined to be bound by such agreement.

73.     Upon information and belief, the Nursing Home Defendants combine to jointly and collectively operate a number of skilled nursing facilities throughout the United States, including Golden LivingCenter - Hillcreek.

74.     Upon information and belief, the Nursing Home Defendants promulgate policies and procedures related to operations at their individual facilities, including Golden LivingCenter – Hillcreek. The topics of these policies and procedures range from the admissions process and paperwork to the manner of nursing care administered in the facility. One such policy and

24

procedure relates to obtaining signatures on the Arbitration Agreements from the residents of Golden LivingCenter – Hillcreek, and the other facilities which the Nursing Home Defendants control and/or operate.

75.     Upon information and belief, the Nursing Home Defendants enforce compliance with these policies and procedures through the Administrators at each facility. In the case of Golden LivingCenter – Hillcreek, James Rife and/or Renay Adkins were responsible for enforcing compliance with these policies and procedures.

76.     Upon information and belief, the Admissions Coordinator Defendant was instructed and trained by the Nursing Home Defendants and/or the Administrator Defendants about how to present, explain, and procure signatures of residents or their responsible parties on the Arbitration Agreement. Upon information and belief, the Admissions Coordinator Defendant was instructed to take any measures necessary, including forging resident signatures, to ensure that the residents of Golden LivingCenter – Hillcreek were forced to submit their claims to arbitration, rather than having them heard by a jury. Alternatively, the Admissions Coordinator Defendant was pressured and/or incentivized by the Nursing Home Defendants and/or the Administrator Defendants to obtain signed arbitration agreements.

77.     Upon information and belief, the Administrator Defendants or Admissions Coordinator Defendant or someone acting at their behest and under their control forged the signature appearing on the Arbitration Agreement at issue herein.

78.     Upon information and belief, no Arbitration Agreement was ever presented or otherwise explained to Ms. Marshall. Ms. Marshall was never informed about the ramifications of signing an arbitration agreement, and was not told that it would in any way affect her entitlement to pursue claims against the Defendants in a court of law, and she was not told that signing an arbitration agreement was an optional act. The Defendants forged, and/or conspired to forge Ms.

25

Marshall's signature on the Arbitration Agreement instead of giving her a meaningful opportunity to evaluate the appropriateness of such an agreement, and execute it with full knowledge of its implications. Alternatively, the Defendants forged and/or conspired to forge Ms. Marshall's signature on the Arbitration Agreement after Ms. Marshall expressly declined to agree to the terms of the Arbitration Agreement.

## FORGERY

79.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-78 as if fully set forth herein.

80.     Pursuant to KRS § 446.070, any person injured by "the violation of any statute may recover from the offender such damages as he sustained by reason of the violation."

81.     The offense of forgery, codified at KRS § 516.030, mandates that "a person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument" including a contract, which affects a legal right.

82.     As stated above, Mildred Marshall did not execute the Arbitration Agreement, which the Nursing Home Defendants have instituted separate legal proceedings to enforce. Instead, the Defendants executed and/or conspired to execute this agreement on Ms. Marshall's behalf without informing her or otherwise obtaining her consent to do so.

83.     By executing the Arbitration Agreement on Mildred Marshall's behalf, and without her permission or knowledge, the Defendants falsely created a contract. By falsely completing and or altering the arbitration agreement in order to prevent Ms. Marshall from bringing suit in a court of law, the Defendants acted with the intent to defraud, deceive, or injure Mildred Marshall and to deprive her of her constitutionally protected right to trial by jury.

84.     The Arbitration Agreement is purportedly a contract between the Nursing Home Defendants and Mildred Marshall, and which deprives Mildred Marshall of her legal right to have

26

her grievances against the Defendants heard by a jury. The Agreement plainly states that it "GOVERNS IMPORTANT LEGAL RIGHTS," and therefore this agreement falls within the purview of KRS § 516.030 and KRS § 516.010.

85. As a direct result of the Defendants' act of forgery, Ms. Marshall has suffered injury in the expenditure of time, money, and resources in defending the parallel lawsuit and asserting her constitutional right to a trial by jury.

## CONSPIRACY

86. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-85 as if fully set forth herein.

87. The Defendants conspired with one another in furtherance of the corrupt purpose of deceiving, misleading, and defrauding the residents of Golden LivingCenter – Hillcreek, including Mildred Marshall, and unlawfully forging agreements and creating the false impression that the residents properly agreed to arbitrate any potential claims they may have against the Defendants. These acts of fraud and deception were calculated to deprive the residents of Golden LivingCenter – Hillcreek, including Mildred Marshall, of their constitutional right to trial by jury. These acts also caused the affected residents, including Mildred Marshall, to expend time, money, and other resources in defending themselves against the Defendants' unlawful acts, and in asserting their right to a trial by jury.

88. This conspiracy was carried out by the Defendants for the purpose of defrauding residents of Golden LivingCenter – Hillcreek into arbitrating all potential claims in an effort to reduce potential monetary liability of the Nursing Home Defendants for injuries sustained by residents while under their care. The Defendants made the collective decision to implement and execute a policy whereby facility employees are required, pressured, and/or incentivized to obtain signatures on arbitration agreements, up to and including fraudulently executing arbitration

agreements, rather than presenting and fully explaining them to the facility's residents and lawfully obtaining their consent to arbitration. The Administrator Defendants and Admission Coordinator Defendant agreed to such a policy and worked in concerted action together and with the Nursing Home Defendants to implement and execute this policy. Alternatively, the Defendants made the collective decision to implement a policy whereby facility employees fraudulently execute arbitration agreements even after residents expressly decline to be bound by the terms of such agreement.

89.     Upon information and belief, the Nursing Home Defendants and the Administrator Defendants controlled the facility's policies, procedures, and training for securing executed arbitration agreements from their residents. The Admissions Coordinator Defendant and the Administrator Defendants were charged with ensuring that these policies and procedures were carried out so that an increased number of residents executed an arbitration agreement during their residency, regardless of whether or not they actually assented to the terms of these agreements. Upon information and belief, the goal of this practice was to ensure that all resident claims against the facility were relegated to arbitration, whether the resident actually agreed to arbitrate or not.

90.     As stated in paragraphs 79-85, the Defendants have carried out their policy of falsely making, completing, or altering contracts with the intent to defraud their residents, including Mildred Marshall. This is an unlawful act which constitutes forgery in the second degree.

91.     By virtue of the Defendants' complicity and agreement in the conspiracy to defraud residents by fraudulently forging arbitration agreements on their behalf, and as a direct result of this unlawful and corrupt conduct, Mildred Marshall has suffered injury in the expenditure of time, money, and resources in defending the parallel lawsuit and asserting her constitutional right to a trial by jury in that lawsuit, as well as the present one, which has been improperly removed to federal court.

92.    Because the Defendants were engaged in a conspiracy, each are jointly and severally liable for the damages incurred by Ms. Marshall.

**ABUSE OF PROCESS**

93.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-92 as if fully set forth herein.

94.    The Defendants have misused the legal process by filing and serving a Complaint and Summons upon the Plaintiff in the parallel lawsuit even with the knowledge that the Arbitration Agreement which they seek to enforce is a forged document and was executed by the Defendants and/or their agents, rather than Mildred Marshall, as the Nursing Home Defendants allege in their Complaint. *See* Defendants' Complaint in the Western District of Kentucky (attached as **Exhibit E**).

95.    The Defendants have acted with malice and conscious disregard for the rights of Mildred Marshall, and have utilized the legal process solely in furtherance of ulterior motives, which include to unlawfully deprive Ms. Marshall of her constitutional right to a trial by jury, and to limit potential liability for personal injury claims by ensuring that those claims are arbitrated rather than heard by a jury, even in the absence of a valid arbitration agreement.

96.    The Defendants are well aware that such a use of legal process is improper and should not be utilized in the regular course of a proceeding to enforce an invalid arbitration agreement, such as the one at hand. Defendants have willfully used this process improperly, and outside the bounds of regular conduct in a legal proceeding in order to obtain a collateral advantage in the form of the forfeiture of Ms. Marshall's constitutional rights in the state court proceeding (the case that has now been removed to this Court) and the limitation of liability by securing the wrongful arbitration of Ms. Marshall's claims rather than resolution by a jury of Kentucky citizens.

29

97.     As a proximate result of Defendants' misuse of the legal process, Mildred Marshall suffered injury in the expenditure of time, money, and resources in defending the parallel lawsuit and asserting her constitutional right to a trial by jury.

## DAMAGES

98.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 – 97 as if fully set forth herein.

99.     As a direct and proximate result of the negligence and wrongful conduct of all named Defendants as set out above, Mildred Marshall suffered injuries including, but not limited to the physical injuries and economic injuries listed herein related to the negligent care and treatment she received at Golden LivingCenter – Hillcreek and the wrongful conduct associated with the Nursing Home Defendants' attempts to enforce an invalid and forged arbitration agreement.

100.     Plaintiff seeks punitive and compensatory damages against all Defendants in an amount to be determined by the jury, but in excess of the minimum dollar amount necessary to establish the jurisdiction of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Marva J. Dockery, as Attorney-in-Fact of Mildred R. Marshall, prays for judgment against GGNSC Louisville Hillcreek, LLC d/b/a Golden LivingCenter – Hillcreek; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC; GGNSC Equity Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Holdings, LLC; James Rife, in his capacity as Administrator of Golden LivingCenter – Hillcreek; Renay Adkins, in her capacity as Administrator of Golden LivingCenter – Hillcreek; and Jen Hancock, in her capacity

as Admissions Coordinator of Golden LivingCenter – Hillcreek: in an amount to be determined from the evidence, the costs herein expended, and all other relief to which Plaintiff is entitled.

Plaintiff expressly reserves all objections to the jurisdiction of this Court and maintains that this matter must be remanded to the Circuit Court of Jefferson County, Kentucky.

**PLAINTIFF DEMANDS TRIAL BY JURY**.

Respectfully submitted this 2nd day of February, 2016,

Marva Dockery, as Attorney-in-Fact of Mildred Marshall

By: /s/ Matthew D. Swindle
Brent L. Moss (KY 93418)
Brian D. Reddick (KY 90762)
Matthew D. Swindle (KY 95374)
Robert W. Francis (KY 96426)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, AR 72202
Telephone:     (501) 907-7790
Facsimile:     (501) 907-7793

*and*

Lee Coleman
**Hughes & Coleman**
1256 Campbell Lane, #201
Bowling Green, KY 42102

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which shall provide service and notice to:

Marcia L. Pearson
Edward M. O'Brien
Wilson, Elsner, Moskowitz, Edelman & Dicker, LLP
100 Mallard Creed Road, Suite 250
Louisville, Kentucky 40207

I hereby certify that contemporaneously with the filing of this Amended Complaint, I caused summons to be issued to the following parties who were named as additional Defendants to these proceedings and sent a copy of this Amended Complaint along with such summons to those parties listed below:

Renay Adkins, in her capacity as
Administrator of Golden LivingCenter – Hillcreek
3116 Breckenridge Ln.
Louisville, Kentucky 40220

Jen Hancock, in her capacity as
Admissions Coordinator of Golden LivingCenter – Hillcreek
3116 Breckenridge Ln.
Louisville, Kentucky 40220

/s/ Matthew D. Swindle
**Reddick Moss, PLLC**

32